## STATE v. NEAL.

No. 7813.   Decided March 28, 1953.   (254 P. 2d 1053.)

**94**

See 40 C. J. S., Homicide, sec. 211. Admissibility of evidence of other crimes. 20 Am. Jur., Evidence, sec. 313; 63 A. L. R. 605.

*Edward M Morrissey* and *Arthur A. Allen, Jr.*, Salt Lake City, for appellant.

*Clinton D. Vernon*, Atty. Gen., *J. Lambert Gibson*, Deputy Atty. Gen., *Allen B. Sorensen*, Asst. Atty. Gen., *Q. L. R. Alston*, Asst. Atty. Gen., and *Bruce S. Jenkins*, Asst. Atty. Gen., for respondent.

WADE, Justice.

Defendant, Don Jesse Neal, appeals from the jury's verdict of murder in the first degree and the death sentence, contending: (1) That the verdict is not supported by the evidence because (a) with his hands cuffed behind him he could not have fired the fatal shot and (b) he could not have formed a deliberate and premeditated intention to kill for the shooting occurred during a scuffle; and (2) that inadmissible evidence was received.

About 2 p. m. of May 23, 1951, Owen T. Farley, a Salt Lake police officer, arrested the defendant near a car, which defendant had been using, which was parked at the curb on the west side of State Street near the east entrance to Auerbach Company department store. After searching and handcuffing his hands behind him, the officer placed the defendant in the middle of the front seat of the car between defendant's woman friend, a Mrs. Tully, on the right hand side and the officer under the wheel on the left hand side. The officer started the car, backed it out from the curb, made a "U" turn to the north and started toward the police station. As they proceeded across the intersection of State and Third South Streets, a scuffle commenced between defendant and the officer in which the officer was fatally shot

and the car stopped by colliding with the rear end of a car which was parked on the east side of State Street a few hundred feet north of the intersection. Whereupon, Mrs. Tully got out of the right hand or east side door and disappeared into the crowd. The defendant and the officer continued to scuffle and defendant was heard to shout, "If you want another one I'll give you one more." The officer fell head first out of the right hand or east front door of the car and the defendant who although almost out of that door drew back into the car and slid to the left hand side under the wheel and got out on that side and went across the street. A mail carrier and another police officer who rushed to the officer's aid before he lost consciousness heard him say distinctly: "I am a police officer." "He shot me." "Call the Department." The officer was removed to the hospital where he died a few hours later from a bullet wound which entered his body slightly above and to the right of his navel and came out slightly lower and on the left side of his spinal column.

After the defendant crossed the street he ran toward the south until he came to the northwest corner of State and Third South Streets. He was carrying a pistol in his hands which were cuffed behind him and partly covered by his coat. He boarded a bus which was stopped at that corner taking on passengers edging his way in ahead of other passengers and threatened the driver, saying, "Get this thing rolling." The bus started toward the south and as it began slowing up to stop at Fourth South Street the defendant again threatened the driver saying, "Keep moving. I just shot a man." The driver drove to the next crossing at Fifth South Street before stopping where the defendant got off at the A & W. Root Beer stand where he approached a woman seated in a parked automobile and ordered her out of the car. When she questioned him he said, "I have a gun here and I'll shoot you if you don't do what I say." The defendant objected to the admission in evidence of these statements.

From the parked car defendant ran west toward Main Street into an alley where he entered an automobile dealer and repair shop, where he threatened one of the employees with the pistol. By that time he had worked his body and legs through his hands so that they were in front of him. Shortly thereafter, policemen swarmed in on the place and he was captured after he had thrown his gun into a sink.

The jury could reasonably find from the evidence that all reasonable doubt that defendant shot and killed the officer was eliminated. The evidence shows that at the intersection the defendant and the officer were scuffling. It would be unusual for him to start a scuffle with the officer, hand-cuffed as he was, unless he had the gun with which he intended to overpower the officer. Defendant's claim that there was no scuffle until just before the shot was fired and the car collided with a parked vehicle, when the officer suddenly leaped out from behind the wheel in front of defendant facing directly toward the east where he was shot from that direction is obviously unbelievable. The only possible inference from that story is that Mrs. Tully threatened the officer with the gun and as he got in that position trying to take the gun from her she shot him. It would be almost impossible for the officer to suddenly leap to that position, and if she threatened him his training as an officer would certainly teach him not to expose the whole front of his body to gunfire when he could have protected himself by keeping the defendant between him and her. His story that after the woman had left the car he felt the pistol land on the seat near his hands and that he automatically picked it up or it got caught in his fingers is also preposterous.

On the other hand, the woman's testimony is not improbable, and if true the defendant did the shooting. She testified that shortly after the officer had backed the car out from the curb and started to the north, the defendant started the scuffle, that he first seemed to reach for something, (probably reaching his hands which were cuffed behind him into the space between the horizontal and up-

right seat cushions and got the gun) then he began shoving his back against the officer, leaving a space between the defendant and her. This would bring his hands with the gun against the officer. That the officer turned the front part of his body toward defendant which would bring defendant's hands holding the gun right in the officer's stomach where the bullet entered his body. At that point she testified that she heard a shot and the officer lost control of the car and it collided with a car parked at the curb, and she opened the door and got out of the car and went into a nearby hotel. There is nothing about this testimony that requires any impossible physical feat or which the jury could not reasonably believe.

There is evidence that the defendant twice asserted that he shot the officer. Two mail carriers on the street as the collision occurred heard the defendant shout during the scuffle: "If you want another one I'll give you one more." Under the surrounding circumstances this was an assertion that he had shot the officer and a threat to shoot him again. Also his statement to the bus driver to "Keep moving. I just shot a man." under the existing conditions was a direct statement that he shot the officer. Also, the officer before he passed out was heard by one of the mail carriers and a police officer to say distinctly "He shot me." Defendant does not deny that he carried the gun with him away from the place of the shooting, and threw it away shortly before he was recaptured. His only explanation is an intimation that Mrs. Tully shot the officer and then placed the pistol on the seat beside him as she left the car and he automatically picked it up or that it got caught in his fingers. This would require her to shoot the officer with cool deliberation although he testified that in the motel holdup the day before in Ogden she was so upset and nervous that she was unable to operate the cash register and take the money. Considering all the facts and surrounding circumstances, the finding that defendant shot and killed the officer is amply supported by the evidence.

The evidence also reasonably supports a finding that the defendant formed a cold, deliberate and premeditated intention to kill the officer. The fact that there was a scuffle at the time of the fatal shot does not show the contrary. Murder in the first degree is often committed during a scuffle. Here the evidence tends to show that after defendant was arrested, handcuffed and placed in the car, he deliberately reached between the seat cushions and got the gun, then maneuvered himself into position so he could shoot the officer, which he did without hesitation or warning. He had plenty of time to plan his course before he got the gun in his hands and from then on he seems to have operated according to his plans until he had shot his way temporarily out of custody, without even giving the officer an opportunity to comply with his wishes without shooting. The evidence is clearly sufficient to support a finding that this killing was intentional and the result of cold, deliberate and premeditated planning.

The court did not err in receiving in evidence the testimony of the bus driver that defendant threatened him with his gun and said, "Keep moving. I just shot a man." nor the testimony of the woman seated in the parked car that he threatened her and said, "I have a gun here and I'll shoot you if you don't do what I say." Defendant's argument that these statements were too remote to be a part of the res gestae and not admissible as such are immaterial because they are clearly admissible on other grounds. Coming as they did while defendant was trying to make good his escape, these incidents and statements tend to show his purpose and design to use the gun to the extent he thought necessary in order to effect his escape and that he had formed such purpose and design in making his escape from the officer's custody. See *People* v. *Coughlin,* 13 Utah 58, 44 P. 94; *State* v. *Nemier,* 106 Utah 307, 148 P. 2d 327. In the *Coughlin* case testimony that defendant shot at officers several days before the crime charged was held admissible even though it tended to prove another offense because it indicated a purpose to kill any one who attempted

to arrest him. And in the *Nemier* case we held that the details of a gun battle after an escape from the state prison was admissible for the same purpose. Evidence of any fact which rationally tends to prove any material issue is admissible unless forbidden by some specific rule,[1] and should be received if offered for an admissible purpose although it would be inadmissible if offered for some other purpose.[2]

The testimony of the bus driver that the defendant threatened him saying, "Keep moving. I just shot a man" is admissible also as an admission contrary to his claim as a party to the action. Such statements by a party to the action are universally deemed admissible when offered by the opponent to such party both as testimonial assertions and for impeachment purposes. This is true regardless of whether at the time when made the statement was against the interest of the party or not and no showing is required that the person making the statement is now dead or unavailable as a witness, for the person who made the statement, being the party to the action against whom it is received, is the only person who can object to it as hearsay and he does not need the opportunity to cross-examine himself because he has full knowledge of what his answers would be, and has full opportunity to take

---

[1]See 1 Wigmore on Evidence, 3d Ed. 293, Sec. 10, II citing Thayer "Presumptions and the Law of Evidence," 3 Harvard Law Review 143; to the same effect see the American Law Institute Model Code of Evidence, Rule 9(f) and the Foreward thereto by Edmund M. Morgan, p. 8; also see Chief Justice Wolfe's prevailing opinion in *State* v. *Scott,* 111 Utah 9 at page 20, 175 P. 2d 1016 at page 1021.

[2]See *State* v. *Nemier*, 106 Utah 307, 148 P. 2d 327; *State* v. *Scott,* supra; also 2 Wigmore on Evidence, 3d Ed. 300, Sec. 13, where he says: "In other words, *when an evidentiary fact is offered for one purpose, and becomes admissable by satisfying all the rules applicable to it in that capacity, it is not inadmissible because it does not satisfy the rules applicable to it in some other capacity and because the jury might improperly consider it in the latter capacity.* This doctrine, though involving certain risks, is indispensable as a practical rule."

the witness stand and make any explanation which he has to refute such evidence.[3]

It was not error to permit the district attorney to cross-examine defendant as to other offenses. Over defendant's objection the district attorney asked him if he committed four robberies in California, giving the time and place of each, within six days prior to this shooting, which he denied. Since no evidence was produced that he was ever charged with or convicted of any of such robberies and the state produced no evidence to that effect, defendant contends that such questions were propounded without having any proof that he committed any of such robberies and the only purpose in asking such questions was to suggest to the jury that he was an habitual criminal and had the disposition and propensity for committing violent crimes and that it was erroneous and highly prejudicial to allow such examination.

Of course, if this questioning stood alone and was made in bad faith without the district attorney having reason to believe him guilty of such offenses, such procedure would be highly improper and the case should be reversed. But the evidence does not show that such was the case. On direct examination defendant of his own accord testified that the day before this shooting he and Mrs. Tully at the point of a gun robbed a motel in Ogden. On cross-examination he admitted that he had been convicted of four previous felonies mentioning forgery, burglary and one robbery and that he was then on parole from California on the robbery. He denied that he knew that he was wanted in California for parole violation or that there was any reason to believe that he could not readily adjust all the grievances which

---

[3]See 4 Wigmore on Evidence, 3d Ed. 2 to 7, Secs. 1048 and 1049. In the 1st Ed. Dean Wigmore adopted a different theory which he changed after an acute criticism thereof by Prof. Edmund M. Morgan, "Admissions as an exception to the Hearsay Rule," 30 Yale Law Journal 355 (1921); see also the American Law Institute Model Code of Evidence, Rule 506, and comment thereon to the effect that the rule reflects the common law rule on that subject.

the California parole board had against him. He admitted however, that shortly before leaving that state he stole the payroll checkbook of a business establishment with its name printed on such checks and that he had forged and passed about 47 of such checks and obtained approximately $600 therefrom, but he claimed that his father, aunt and wife were negotiating to make restitution of that money. Then he was asked if he committed these four robberies, to which he objected, and when required to answer he denied committing any of them. Thereupon he was asked if he had not admitted to the police officers that he had committed such robberies, to which he answered that he did not remember making such an admission but if he did it was from duress and coercion. Later the State called a police officer and started questioning him as to such admissions and on defendant's objection on the ground of coercion a hearing in the jury's absence was held where defendant testified that he was severely beaten and subjected to other third degree tactics in obtaining his statement. Thereupon the district attorney stated that he had not anticipated that such a claim would be made and that rather than spend the time necessary to produce evidence to refute it he would withdraw the question.

This evidence does not indicate bad faith on the part of the district attorney nor that the purpose of this questioning was to merely show that he was an habitual criminal with the propensity for committing violent crimes. It shows clearly that defendant had committed many felonies both before and since he was last in custody. It further shows that the avowed purpose of this examination was to establish that defendant was facing a series of prosecutions in Utah and California and thereby supplies a strong motive for trying to shoot his way to freedom at the time he escaped from Officer Farley.

Defendant's contention that evidence of other crimes was inadmissible, under the circumstances of this case, is incorrect. He quotes the *Nemier* case, supra, and concludes

therefrom that there is a general rule that evidence of other crimes is not admissible but that there are exceptions to such rule where such proof is relevant to prove intention, design or motive in or for the offense. But the part quoted purports to be a statement of an erroneous theory of the law in such matters. That case held that the state may not prove other offenses where the sole and only purpose of such proof is to show defendant's propensity to commit crime because the jury is apt to give such evidence undue weight, but such evidence is admissible when offered for the purpose of showing an intention or design to or a motive for commission of the offense charged. In other words, the rule as stated in the *Nemier* case and more clearly by Mr. Chief Justice Wolfe in the *Scott* case supra, is that evidence of other offenses is excluded only where the sole purpose is to show defendant's propensity for the commission of crime and does not include cases where the purpose of such evidence is to show defendant's intention or design to or motive for commission of the crime charged. Here it is clear that the avowed purpose of the district attorney in this cross-examination was to show that defendant had a strong motive for shooting the officer, so evidence that defendant committed these four robberies would have been admissible. Since there are circumstances which indicate that the district attorney had reason to believe that the defendant would admit that he committed these robberies the same as he admitted the other offenses about which he was questioned, it was not error to admit such questions.

We have carefully examined the other contentions of defendant and find them to be without merit.

Judgment affirmed.

WOLFE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., not participating.