361 P.2d 412

**STATE of Utah, Plaintiff and Respondent,**

v.

**Cecil A. DICKSON, Defendant and Appellant.**

**No. 9343.**

Supreme Court of Utah.

April 18, 1961.

K. Samuel King, Salt Lake City, for appellant.

Walter L. Budge, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Defendant appeals from a conviction of robbery.

About 9 p. m. on March 10, 1956, two men carrying pistols and holding handkerchiefs over their faces robbed the Canyon Rim Food Market in southeast Salt Lake City. One of them forced three employees to lie down while the other took the manager to the cash registers and safe and compelled him to turn over the money.

The defendant was tried on a charge of having committed that robbery and the jury failed to agree upon a verdict. Upon a second trial, the state adduced additional evidence and defendant was found guilty.

The important aspect of this appeal is the charge that the admission of some of this additional evidence, specifically, phases of the cross examination of the defendant, was error.

■ The first relates to questions about previous felony convictions. The trial court properly indicated the view that the defendant could be questioned about such convictions; and as to the number and the type of crime involved for the purpose of impeaching his credibility as a witness.[1] But the prosecutor pressed beyond that. After bringing out the fact that the defendant is a singer, he questioned:

"Q. Now, you have made a lot of personal appearances, haven't you? Ans. Yes, sir, I have.

"Q. In fact, you made a personal appearance at San Quentin, didn't you? Ans. You say San Quentin. It was actually Chino, Honor Farm, with no wall around it."

Defendant admitted two robbery convictions in California. The prosecutor then asked:

"Q. And both of those happened to be food markets, too, didn't they? Ans. No, sir. They were liquor stores."

The prosecutor based his right to go into the detail of these felonies upon the theory that he was trying to show a "modus operandi." This type of evidence as to other crimes has been allowed for the purpose of showing that the accused was following some plan or scheme of which other crimes were a part; or where there was something distinctive or unusual about the appearance or conduct of the actor, or where the crime was committed in some particular way, so as to lead one to think it unlikely that this particular thing would be present in two separate crimes unless they were committed by the same person. Where such circumstances exist, an inference logically can be drawn that the person who committed the one committed the other; and for this reason complicity in the other offense may be shown as bearing on the question whether the defendant committed the crime for which he is being tried.[2]

A good example of this is in the case of Whiteman v. State.[3] The Supreme Court of Ohio approved the admission of evidence of the modus operandi where several robberies had been carried out on the same night in the same neighborhood in a similar manner. Two men in a car, having flashlights and wearing bus driver's uniforms so

---

1. State v. Crawford, 60 Utah 6, 206 P. 717; State v. Hougensen, 91 Utah 351, 64 P.2d 229.

2. See Wharton's Criminal Evidence, Vol. 1, Sec. 235; Annotation 63 A.L.R. 602.
3. 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595.

they would appear to be peace officers, would drive alongside other cars, direct them off the road and stop them; then after having the occupants open their car doors, would rob them at gunpoint. This similarity of circumstances of the several robberies was held to justify receiving the evidence of other offenses to identify the defendants. But it is obvious that the requirement of some similarity peculiar to the two crimes is not satisfied by the mere fact that two men were involved in a similar crime, and that the elements common to all crimes of that type were made out.[4]

In regard to the questioning about the felony convictions in California: perhaps the argument of the State that it resulted in no prejudicial error could be agreed with for these reasons: that it was permissible to show that the convictions were for robberies;[5] that whether food stores or liquor stores is of no special consequence; and that defendant has no particular complaint because of his own volunteering that they were liquor stores. But in view of the other assignment presently to be discussed, the possible prejudice of the foregoing need not be resolved because the prosecutor, proceeding upon the same theory, over defense objection, elicited other testimony of quite a different character and effect.

The matter of graver importance relates to cross examination of the defendant about an incident at Fort Worth, Texas, subsequent to this alleged robbery in Salt Lake City. He admitted being involved in the incident referred to by the prosecutor, and that both he and his brother had received gunshot wounds. His story of the occurrence was that while he was in a car waiting for his brother, the latter got into an altercation in the street during which a man drew a gun and shot the brother; that the defendant went to the aid of his brother and while helping him back to the car was also wounded. He said his brother had pleaded guilty to the crime of attempted robbery; that he himself had been charged with being an accessory but had not been tried for this offense. Although it has been stated that the trial court has some discretion as to the cross examination with respect to other crimes for impeachment purposes,[6] we are aware of no authority which goes so far as to allow such questioning as that here: where the fact adduced is only that the witness has been charged with such a crime. Nor do we think that reason or justice would support any such conclusion.

There was no justification for the questioning as to the incident in Texas on the theory of modus operandi. Practically the

---

4. See State v. Buxton, 324 Mo. 78, 22 S.W.2d 635. Evidence of other robberies in the same neighborhood on the same evening not admitted.

5. See State v. Crawford and State v. Hougensen, footnote 1, supra.
6. State v. Hougensen, footnote 1, supra.

only similarity shown is that two men were involved in both incidents. From the defendant's explanation even that is not clear, since he says that he was charged only with being an accessory. In the absence of any greater similarity in the two situations than is shown, the Texas incident would have no legitimate probative value as to defendant's complicity in the robbery charged here. Its only effect would be to cast aspersions upon the defendant and to imply that because he was involved in the Texas trouble he is a person of evil character who would be likely to commit such a crime as the robbery here charged. The very purpose of excluding such evidence is to prevent the prosecution from smearing an accused by showing a bad reputation and relying on that for conviction rather than being required to produce adequate proof of the crime in question.

It is the sound and salutary policy of the law to indulge everyone, including convicted felons, with the presumption of innocence, and to require the state to obtain and present sufficient credible evidence to convince the jury of the defendant's guilt of the crime charged beyond a reasonable doubt. If this were not so, serious and perhaps insuperable obstacles to reformation and rehabilitation would exist for a man who had once acquired a bad reputation. For the reasons stated above it is our opinion that it was improper to permit the questioning of the defendant about the Texas incident, bringing out the fact that he had been charged with a crime in connection with it.

A comment is in order in regard to State v. Neal,[7] decided by this court, which is relied on by the State as justifying the questioning of the defendant as to being charged with another felony. While it is true that we there approved questioning the defendant concerning his being charged with robberies for which he had not been convicted, that case stands for no such broad rule that it may be done generally; and it should not be extended beyond its true holding. The dangers of injustice in admitting evidence concerning other crimes must be recognized.

The universally accepted general rule is that such evidence is not admissible if its effect is merely to disgrace the defendant or show his propensity to commit crime. However, where evidence has special relevancy to prove the crime of which the defendant stands charged, it may be allowed for that purpose; and the fact that it shows another crime will not render the evidence inadmissible.[8] The justification given in the Neal case was that the evidence was deemed relevant to show Neal's motive for killing. The victim was a peace officer who

7. 123 Utah 93, 254 P.2d 1053.

8. 1 Wharton's Criminal Evidence, Secs. 233 et seq. (12th Ed.1955).

was attempting to take him into custody. It was held proper to show that Neal was a fugitive from justice wanted on charges of robbery in California who would be trying desperately to avoid capture by police and would therefore have a strong motive for killing the officer. No such special justifying circumstance existed here.

Inasmuch as we cannot say with any degree of assurance that there would not have been a different result in the absence of the error in cross examining the defendant about the incident in Texas, it must be regarded as prejudicial and the case remanded for a new trial. That being so, we deem it our duty to comment on additional matters raised on this appeal which may prove helpful in the further proceedings in this cause.

 One of these relates to the refusal of a defense request to instruct the jury that witnesses who falsify may be prosecuted for perjury whether they testify in open court or by deposition. There was no error in refusal to so instruct. That is not a matter of concern for the jury. We also observe that we do not see any propriety in the prosecutor's questioning a defense witness as to whether he had been put in jail at the time of the previous trial for contempt of court for lying.

Reversed and remanded for a new trial.

WADE, C. J., and McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice.

I concur in the result but not in the main opinion's apologia justifying State v. Neal,[1] in which case I declined participation. I think the bona fides of the prosecuting attorney should be no factor in determining the admissibility of erstwhile inadmissible evidence of previous unsubstantiated, unsupported, uncharged and unconvicted offenses, a factor implied in the Neal case. Nor do I think it justifiable to require an accused to give evidence against himself as to such unfounded charges on the tenuous basis that it might show he had "a strong motive for trying to shoot his way to freedom." Felons generally like to escape, but previous ethereal accusations should be no vehicle in which to carry them to the gaol.

That portion of the main opinion that refers to the Neal case and states that "The universally accepted general rule is that such evidence [of other crimes] is not admissible if its effect is merely to disgrace the defendant or show his propensity to commit crime [et seq.]" is a disarming statement not pertinent to the Neal or this case. It assumes, unwarrantedly, that the four other "alleged" crimes interjected into the Neal case had been proven. In the Neal case the "alleged" four crimes that

1. 123 Utah 93, 254 P.2d 1053.

**14**

supposedly went to show Neal guilty were not shown to have been perpetrated and no foundation was laid to establish such offenses or proof thereof,—the only inference being that because a prosecutor, thumbing through some papers, and this court opining that he was acting in good faith, the inadmissible evidence by some sort of prestidigitation became inadmissibly admissible. I cannot subscribe.