382 P.2d 407

**STATE of Utah, Plaintiff and Respondent,**

v.

**Donald Gene KAZDA, Defendant and Appellant.**

No. 9792.

Supreme Court of Utah.

June 14, 1963.

---

Donald Gene Kazda, pro se.

A. Pratt Kesler, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Stephen L. Johnston, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice.

Defendant appeals from a conviction by a jury of the crimes of assault with intent to commit murder and robbery.

On February 20, 1962, an elderly man was robbed and shot at his home in Bridgeland, Utah. A Mrs. Norma Barker testified that she had accompanied the defendant and his brother, Dennis, in an automobile from Salmon, Idaho to Bridgeland where the two brothers put nylon stockings over their heads, took a sawed-off shotgun and entered the home. Upon their return they told her of the robbery and shooting.

Prior to defendant's trial Mrs. Barker had been convicted of being an accessory and Dennis convicted of the same two crimes for which the defendant now stands convicted.

Both the defendant and his brother testified that the defendant was asleep in the back seat of the automobile at the time and was unaware of the occurrence.

Defendant first urges that there was no corroboration of the testimony of Mrs. Barker, an admitted accomplice, and that the evidence was insufficient. These contentions are without merit. The defendant admitted his presence in Bridgeland at the time of the incident; the shotgun and the nylon stockings were found along the route taken by the trio after leaving the scene; and, an independent witness testified that the defendant admitted to him that he shot a man with a shotgun in Utah.

Also assigned as error is the cross-examination of the defendant as to prior convictions. It was elicited upon cross-examination that the defendant had several prior felony convictions, unrelated to the instant charge, and he maintains that this amounted to a general assault upon his character and thus constituted prejudicial error. This is also without merit. When an accused voluntarily takes the witness stand he may be asked whether or not he has ever been convicted of a felony. Such a question is sanctioned by statute.[1] If the accused answers in the affirmative, he may be asked the nature of the felony.[2] Further, the accused may be asked if he has been convicted of more than one felony,[3] and if so, the type or nature thereof.

1. 78–24–9, U.C.A.1953; State v. Crawford, 60 Utah 6, 206 P. 717.
2. State v. Crawford, ibid; State v. Dickson, 12 Utah 2d 8, 361 P.2d 412.

3. People v. Eldridge, 147 Cal. 782, 82 P. 442. It is true that 78–24–9, U.C.A.1953 uses the word "felony" in the singular, but 68–3–12(6) provides that in construing statutes the singular includes the plural.

■ The apparent purpose and reason for permitting the prosecution to question the accused regarding prior *felony convictions* is to affect his credibility as a witness.[4] However, the details or circumstances surrounding the felony or felonies for which the accused was convicted may not be inquired into except under unusual circumstances, when the inquiry would tend to show a scheme, plan, modus operandi, or the like. In the instant case the details of the prior felony convictions were not asked of the defendant.

■■ This brings us to an assignment of error made by the defendant which is meritorious. At the trial an F. B. I. agent testified for the State. His testimony related to interviews had with the defendant after the latter had been arrested and incarcerated (not for the crimes for which defendant now stands convicted) in Medford, Oregon. The only pertinent, and admissible, statement made by the defendant to the agent was that (referring to the Bridgeland incident) "I guess you can consider me an accessory to the fact * * *. I was in the back seat of the car drunk and my brother Dennis and Norma Barker robbed that man * * *. Norma Barker shot the man."

However, the court permitted, over some objections, the prosecuting attorney to elicit from the agent the entire conversations he had with the defendant which included questions by the agent relating to various crimes, including murder, which had been committed in numerous states. The defendant denied the commission of these crimes, but, according to the agent, did admit that he had been arrested for an armed robbery of a liquor store in Nebraska, but that he had had nothing to do with the same. At the close of the interrogation the agent, as he so testified, advised the defendant that there were two outstanding warrants for his arrest in Nebraska.

It is true that the court, in response to an objection, at one time admonished the jury that any offenses mentioned in the interrogation should be disregarded since they did not tend to connect defendant with the instant case. However, the prosecution proceeded to elicit from the agent the entire conversation.

We deem the foregoing to constitute prejudicial error. It implied that the defendant was implicated in other crimes, none of them proven, and could have no other effect than to degrade the defendant and give to the jury the impression that he had a propensity for crime. It is true that the defendant admitted prior felony convictions, but "we cannot say with any degree of assurance that there would not have been a different result"[5] in the absence of such testimony.

4. State v. Crawford, supra n. 1.

5. State v. Dickson, supra n. 2.

**270**

Reversed and remanded for a new trial.

McDONOUGH, CROCKETT and WADE, JJ., concur.

HENRIOD, Chief Justice (concurring in the result).

I concur in the result but do not subscribe to the conclusion that in this case it was not prejudicial to ask and require defendant to answer as to prior felony convictions. Admittedly a witness, in a proper case, may be asked if he has been convicted *of felony* (not felonies) under the statute. It is urged that the singular includes the plural and vice versa, by virtue of another statute, but such argument is hardly impressive when the liberty or possibly the life of a defendant may be at stake and possibly at the mercy of an immaterial factor consisting of forcing him, under penalty of perjury, to testify to a series of indiscretions occurring perhaps many years before, having no relevancy to the offense with which presently he may be charged, but having the effect of placing him in the eyes of the jury as an irresponsible person whose prior conduct suggests that he cannot possibly be telling the truth at the present time.

Admittedly some Utah cases say a witness may be asked if he has committed a felony, but the case that started the whole thing seems to have been the Crawford case.

1. 91 Utah 351, 64 P.2d 229 (1936).

An analysis of that case indicates that it does not support the conclusion that one might be asked about a whole series of prior offenses. It said the defendant, after having been asked the question, stated he had been convicted of robbery. His own counsel asked the initial question. On cross-examination he was asked if he had been convicted of burglary, to which an objection was made that the case was pending on appeal and therefore was not a conviction. One is left to conjecture what the court would have done had the objection been to the effect that the statute permitting an answer to a felony, not a dozen.

It is interesting to note that in State v. Hougensen,[1] which followed the Crawford case, the court in setting forth eleven areas of cross-examination, summarizing the do's and don'ts, the very first rule laid down was that "(1) Any witness may be asked on cross-examination whether he has been convicted of *a felony*." It was strictly confined to the singular and nowhere did the court say a witness may be asked whether he has been convicted of *one or more felonies*. The court obviously did not consider the Crawford case as supporting anything other than that a witness might be asked if he had been convicted of *a felony*.

The main opinion calls attention to State v. Dickson,[2] as authority that "[i]f the accused answers in the affirmative, he may be:

2. 12 Utah 2d 8, 361 P.2d 412 (1961).

asked the nature of the felony." The majority opinion does not cite the case for the proposition that one may be asked indiscriminately about prior felonies, but calls upon a California case for that proposition.[3] That case decided in 1905 and having to do with murder during a prison break, interpreting a similar statute, said it "places no limitation upon the number of felonies of which may be shown he has been convicted." and that therefore "no such limitation could have been intended." This in spite of the statute being written in the singular. In such event it would seem to this writer that the opposite interpretation should be given to such a statute, since it refers to only one felony, and should be construed in favor of an accused to the effect that there *was* a limitation. The legislature could have said "felonies" as easily as "felony" but deliberately chose not to do so. The main opinion here seems to conclude that were it not for another statute allowing for inclusion of the plural in the singular, such would be the proper interpretation. The California case did not even bottom its determination on any such reasoning that statutorily the singular included the plural, and consequently indulges but an ipse dixit.

It appears significant that the main opinion did not cite the Dickson case for the proposition set forth in the California case. It appears that the Dickson case said about what the California case said, but in support thereof cited the Crawford and Hougensen cases. On re-examination of those cases it appears to me that they are not authority for the proposition stated. For that reason, this writer, with some embarrassment for having concurred outright with all of the Dickson enunciation of principles instead of most of them, feels constrained to state that presently he would not concur in the proposition laid down by the California case or that portion of the Dickson case similar to the former.

Irrespective of all this, I think the instant case to be different than all the cases discussed above. Defendant had pleaded not guilty. On the witness stand he simply orally pleaded not guilty again, and added that he was drunk and asleep in the back seat of the car. The prosecutor, after objection, announced that he was asking the questions about prior convictions to *impeach*. The defendant said he had been convicted of a felony and named it. There were only two things for the prosecutor to try to impeach: 1) that defendant was asleep in the car and 2) that he had been convicted of a felony. To try and impeach on the latter matter, where the answer reflected the truth, would require evidence to the effect defendant was *not* convicted of a felony. To try and impeach one who is telling the truth is to attempt to dub him as

3. People v. Eldridge, 147 Cal. 782, 82 P. 442 (1905).

a truthful liar, which of course is absurd. To impeach as to 1) being asleep in the car, the prosecutor could ask him questions to show he was *not* asleep there. It is difficult to understand how questioning defendant about prior felony convictions had any logical connection with the scanty testimony given on direct examination, and in my opinion it was prejudicial error in permitting it. Why not face it? In a case like this, where the defendant has admitted a felony, enough damage is done him in the eyes of the jury, and any further cross-examination as to other felonies, ordinarily is simply an attempt to suggest that the defendant was an undesirable, nondescript person, and by way of innuendo, make him a stranger to the truth, further suggesting that anything he might say in the instant case would be unreliable and thus become a factor in establishing his guilt.

It is my opinion that the statute allowing the question and answer, should run the course of its letter and spirit when the accused freely admits he has been convicted of *a felony*, and from the language thereof it would appear that this was what the legislature had in mind. I am unimpressed with the singular-including-the-plural argument when a man's liberty is at stake. If the statute, as written in the singular, means plural, two questions pop up: 1) Is it an attempt by legislative fiat in criminal as well as civil cases to establish rules of evidence inimical to accepted standards and precedent, with respect to impeachment,—a judicial prerogative and 2) does it offend constitutional guaranties?

It appears that the latitude allowed here permitted a fishing expedition. The defendant, under penalty of perjury became little more than a fish without much opportunity other than to refuse the bait, and the prosecution had no authenticated records to justify the outing.

It is my opinion that under the statute a witness should answer if he has been convicted of a felony. If he answers "yes," the state should have the onus of presenting evidence designed to prove him guilty beyond a reasonable doubt, on independent evidence, without resort to innuendo suggesting bad character by prior conduct. If he answers "no," the state should be allowed to impeach him as far as it can, but only with evidence of prior convictions reflected in authenticated admissible documents actually admitted in evidence.