457 P.2d 532

The STATE of Utah, Plaintiff and Respondent,

v.

Richard L. PETERSON, Defendant and Appellant.

No. 11400.

Supreme Court of Utah.

July 18, 1969.

Ollie McCulloch, Salt Lake City, for appellant.

Vernon B. Romney, Atty. Gen., Winston M. Faux, Asst. Atty. Gen., Salt Lake City, for respondent.

TUCKETT, Justice:

The defendant was charged with the offense of selling LSD to a minor. After the jury had returned a verdict of guilty the court sentenced him to serve not more than three years in the Utah State Prison. From the conviction and sentence the defendant has appealed to this court.

During the course of the trial the defendant elected to testify in his own behalf. The district attorney in cross-examining the defendant inquired of him whether or not he had used marijuana. The district attorney also asked the defendant several questions concerning his familiarity with and his use of marijuana. The defendant was compelled to answer. The defendant through his counsel moved for a mistrial which the court denied, but the court did sustain an objection to questions put to the defendant concerning his use of marijuana after he had answered the questions. The court thereupon instructed the jury to disregard any statements dealing with the defendant's use of marijuana.

It is the defendant's contention here that it was error for the district attorney to interrogate him as to his use of other narcotics. It should be noted that the inquiry of the district attorney had to do with the defendant's use of marijuana which in and of itself is an offense under both the Uniform Narcotics Drug Act and also the Drug Abuse Law. We are of the opinion that the inquiry by the district attorney constituted prejudicial error.[1] It would seem that the error can only be corrected by remanding this case for a new trial.

Inasmuch as this case must be tried again there are certain matters which require our comment. It would seem that the information intended to charge the defendant with the violation of Section 58–13a–2, U.C.A.1953, as amended. The briefs of both the appellant and respondent refer to a violation of that section. However, that section of the statute does not appear to make a distinction as to whether the drug sold be to a minor or to an adult.

It is likely that some confusion exists by reason of the fact that the 1967 session of the legislature passed two separate acts pertaining to the subject matter of narcotics. Chapter 139 of the Laws of 1967 amended the Uniform Narcotics Drug Act so as to include LSD. Chapter 140 of the same Session Laws enacted legislation entitled Drug Abuse Law which also dealt with LSD as well as numerous other drugs. The court in pronouncing its judgment

1. State v. Kazda, 14 Utah 2d 266, 382 P.2d 407.

sentenced the defendant to the term of imprisonment as specified in Chapter 140. The case of State v. Shondel [2] recently decided by this court deals with overlapping of the two statutes.

Reversed and remanded.

CROCKETT, C. J., and CALLISTER and HENRIOD, JJ., concur.

ELLETT, Justice (dissenting):

I dissent. I am opposed to reversing because I can see no error in what was done. The main opinion does not give the setting for the supposed erroneous proceedings, and without that setting a proper decision on the matter cannot be made.

The defendant, a 19-year-old dropout, had returned to high school. He sold some purported LSD pills to another high school student and claimed to be greatly surprised to learn that they contained LSD. He testified in his own behalf and, for reasons best known to himself and his lawyer, introduced into evidence a theme paper which he had written dealing with "Hallucinosis Drugs," their dangers and effects. The paper showed that he had a thorough knowledge of the dangers and effects of many drugs, including LSD and marijuana. The theme went into detail as to marijuana. Its history was traced. Its effects on a user were described, and the price at which it could be purchased was indicated. In one paragraph of the theme he stated:

Daily use of Marijuana is imcompatable [sic] with effective mental work. The effect may last four to six hours. Social drinking and marijuana are not in the same league for marijuana is much more serious, there are approximately two hundred users in the community. One cannot be a daily smoker of marijuana and function properly, while under the influence of the acute effects of marijuana your judgment and inhibitions are markedly altered, you have a marked thought detachment, your depth perception is increased and you may have a preoccupation with sex. Your words frequently come out in a pecular [sic] order and reaction time is twice as slow. Your ability to preceive [sic] time and space are markedly distorted.

By getting the document before the jury, the defendant had the district attorney at a loss to know how it might be of importance in the minds of the jury and how it might affect their verdict.[1] A natural question to ask one who professed to know so much about the effects of marijuana would be, "Have you ever tried it?" If the defendant did not want that question asked, then he should not have testified

---

2. State v. Shondel, 22 Utah 2d 343, 453 P.2d 146.

1. One would suppose the document was placed in evidence to give weight to his testimony that the drug sold was not LSD.

through his own written document that he knew so much about its use and effect.

The so-called erroneous questions and the answers thereto relating to marijuana are as follows:

Q  Do you know what it looks like?

A  Yes, I have had occasion to see it.

Q  Have you had the occasion to use it?

MR. BINGHAM: Now just a minute here. What are you trying to do here?

MR. SORENSON: I'm testing his credibility, your honor.

MR. BINGHAM: He's not accused of selling marihuana or anything, Dave.

MR. SORENSON: Now, your honor, we're talking here about knowledge this man has. I'm asking him if he has firsthand knowledge.

THE COURT: All right.

Q  Have you used it?

A  I've had the occasion, yes.

Q  To smoke marihuana?

MR. BINGHAM: Now, your honor, I move for a mistrial. Mr. Sorenson very well knew what he was doing, your honor. You cannot do this, your honor, in a court of law and expect to have a jury that is unprejudiced.

MR. SORENSON: Now, your honor—

MR. BINGHAM: I submit it, your honor. I won't argue it.

THE COURT: I think I'll sustain the objection and instruct the jury to disregard it.

It will be noted that counsel for the defendant made an argument but no objection to the questions until after the objectional answer was given. He then did not object. He simply moved for a mistrial.

It is to be noted that the defendant gave no answer as to whether he had ever smoked marijuana. He simply answered that he had "used it."

Section 58–13a–2, U.C.A.1953 (Replacement Volume 6), makes it unlawful to manufacture, possess, have under control, sell, prescribe, administer, dispense, or compound cannabis (marijuana) except as authorized in the Uniform Narcotic Drug Act. One might be able to "use" it without violating the prohibitions mentioned in the statute, in which case it would not be a crime even in Utah. The jury was not told how the defendant "used" it. It could have been under the direction of a psychiatrist and, if so, it certainly would not have been a crime. Besides this, the jury was not told where it was that the defendant had used marijuana. There undoubtedly are many places outside of the State of Utah where the "use" of marijuana is not prohibited by law. At no time was the jury told that the use of marijuana was a crime. By instructing the jury to disregard the statements about marijuana, the

trial judge in my opinion correctly handled the situation.

I also think that there was no error in asking the question in the first place, considering the circumstances which brought it forth, and I certainly cannot see how the defendant was prejudiced thereby. I would, therefore, affirm the conviction.