STATE of Utah, Plaintiff and
Respondent,

v.

Richard Karl KEREKES, Defendant
and Appellant.

No. 16489.

Supreme Court of Utah.

Dec. 16, 1980.

1162

Joseph C. Fratto, Jr., of Salt Lake Legal Defenders Association, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Robert R. Wallace, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

---

1. All statutory references are to Utah Code Ann. (1953), as amended.

STEWART, Justice:

Defendant appeals from his conviction by a jury of eleven counts of theft by deception in violation of U.C.A. § 76–6–405.[1] We affirm.

There was sufficient evidence to justify the jury in believing the following: In 1976 defendant became involved with Rex Parsons and certain other persons in planning a scheme to sell vending machines. The price was to be paid in advance, but, except for some early deliveries to give the appearance of a legitimate business, the machines would not actually be delivered to investors. Such a scheme was established in Arizona, and subsequently a business enterprise known as Fruit Juice, Inc., and Fruit Juice of Salt Lake was incorporated in Utah. The business used a phone solicitation approach to find people willing to invest money to purchase and place one or more fruit juice vending machines that would yield a monthly profit. Employees were hired by defendant and others to make the calls and to follow up by meeting with interested persons. Office managers ran the day-to-day operation of the business. Defendant commuted from Arizona and spent one or two days a week at the Salt Lake City business offices.

Vending machines were sold and delivered to some investors. A number of people, however, signed contracts and paid for the machines but did not receive them. Eleven of these persons were complaining witnesses named in the information. They testified that when they became concerned about the business' failure to deliver their machines, they unsuccessfully tried to contact Fruit Juice, Inc., and eventually became aware that it was no longer conducting business. In fact, the office was closed down and business ceased in August 1977. Defendant was charged with and convicted of theft by deception.

Defendant asserts in the alternative that his conviction should be reversed, that he

should be granted a new trial, or that he should be sentenced pursuant to the lesser violation of fraudulent business practices, § 76–6–507. He relies on the following four contentions: (1) testimony of co-conspirators was erroneously admitted; (2) testimony of accomplices was not corroborated; (3) defendant's punishment should have been based on § 76–6–507 because it is more specific regarding the illegal conduct alleged and has a lesser penalty than theft by deception; and (4) the evidence was insufficient to support the jury's verdict.

We consider first defendant's challenge to the admission of the testimony of Rex Parsons and Howard Woodall, who are characterized as co-conspirators. Their testimony supported the State's characterization of Fruit Juice, Inc., as a front for a scheme to obtain money from investors and then leave town without delivering the promised machines. Parsons testified that he was the person who presented to defendant the idea to set up the scheme in Arizona, and later Parsons and defendant came to Salt Lake City to establish a similar operation. Woodall testified that he took part in some of the initial conversations in Arizona about the plan, but that he discontinued his contact with the defendant and Parsons and had no part in the subsequent operation, either in Arizona or Utah. Woodall's testimony as to his noninvolvement was uncontradicted.

Defendant contends that the damaging statements contained in the testimony of these two men, whom be characterizes as co-conspirators, lacked proper foundation and were inadmissible hearsay statements. Rule 63(9)(b), Utah Rules of Evidence, entitled "Vicarious Admissions," allows the admission of hearsay statements of co-conspirators made in the course of a conspiracy.[2] Defendant properly asserts that the admissibility of hearsay statements of co-conspir-

ators falling within this exception must be predicated upon independent evidence of the existence of the conspiracy, apart from co-conspirator hearsay declarations. *State v. Erwin*, 101 Utah 365, 120 P.2d 285 (1941).

■ Defendant has, however, improperly characterized the nature of the challenged testimony, and his objection to its admissibility is without merit. Parsons and Woodall testified primarily to statements constituting admissions by the defendant concerning his criminal intent. Out–of–court statements of a party are not subject to the foundational requirements of Rule 63(9) but are admissible pursuant to Rule 63(7), which embodies the age-old common law exception to the hearsay rule known as an admission of a party.

■ Defendant concedes the admissibility of testimony by the witnesses as to what they themselves did or said and as to what the defendant did or said. But defendant contends that the testimony of Parsons and Woodall was "tainted" when placed in context with testimony as to what persons other than the defendant or the witnesses were doing or saying during the course of the alleged conspiracy. Defendant has not, however, cited any objectionable testimony by Parsons or Woodall as to third-party out-of-court statements. The only statements attributed to third parties were volunteered by the witnesses, and no valid objection or motion to strike was made in response to them. These included out-of-court statements allegedly made by Bill Wilson, who had been involved in a similar scheme in Colorado, and an attorney named Dick Berry, who advised the group on incorporation requirements. These statements were made not to Utah investors but only within the small group of original organizers. In the absence of a valid objection or motion to strike, the admissibility of hearsay may not be raised on appeal.

**2.** That rule provides for the admissibility of, [a]s against a party, a statement which would be admissible if made by the declarant at the hearing if * * * (b) the party and the declarant were participating in a plan to

commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination. . . .

■ Defendant further contends that the testimony of Parsons and Woodall regarding activities that took place in Arizona was inadmissible under Rule 55 of the Utah Rules of Evidence.[3] That rule proscribes evidence of another crime or civil wrong unless it is relevant to prove certain material facts, such as motive, intent, plan, or knowledge. *State v. Daniels*, Utah, 584 P.2d 880 (1978). Evidence of prior acts admissible under Rule 55 is also subject to a determination by the trial judge that its probative value is not outweighed by the possibility of undue prejudice. *State v. Gibson*, Utah, 565 P.2d 783 (1977).

It is the sound policy of the law that evidence of prior crimes may not be admitted to show the propensity of a defendant to commit another crime. But in situations where evidence of other crimes or wrongs is particularly relevant in proving a specific element of the crime for which the defendant is on trial, the evidence may be allowed for that purpose. See *State v. Lopez*, 22 Utah 2d 257, 451 P.2d 880 (1978), *State v. Dickson*, 12 Utah 2d 8, 361 P.2d 412 (1961).

■ As to the testimony regarding planning meetings which took place in Arizona, defendant's argument based on Rule 55 misses the mark. The testimony of Parsons and Woodall concerning discussions and meetings in Arizona related directly to the plan for the Salt Lake City operation, which itself gave rise to the criminal charges against defendant. This evidence is not governed by Rule 55 because it constituted an early step in the effectuation of the criminal scheme that was consummated in Salt Lake City.

■ Defendant also argues that evidence of the actual operation of the Arizona fruit juice business was subject to Rule 55 and that the State did not establish the required foundation for its admissibility. However, Parsons testified that he and the defendant were among those who intended to "take the money and run" once the business became established. They sold and delivered some machines to investors, but failed to deliver machines to others and kept the purchase price. The Arizona scheme was terminated when an associate absconded with the funds collected.

■ Evidence of defendant's prior acts similar to those charged in this case was admissible to establish defendant's intent and modus operandi. Such evidence need not necessarily rise to the level of a criminal offense. *United States v. Simmons*, 503 F.2d 831 (5th Cir. 1974).

The similarity of the Arizona scheme and the Salt Lake City activities, their proximity in time, and their peculiarity serve to establish defendant's intent and knowledge regarding the illegal nature of the operation. Therefore, this evidence was admissible under Rule 55. Cf. *Weeks v. United States*, 313 F.2d 688 (10th Cir. 1963).

■ Defendant further asserts that as a prerequisite to the admission of evidence of prior wrongdoing for any permissible purpose, it is necessary to show by clear and convincing proof the illegality of the prior act.[4] We do not find it necessary in this case to reach the issue of the burden of proof regarding evidence of prior wrongdo-

3. Rule 55 provides:

Other Crimes or Civil Wrongs. Subject to Rule 47 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to Rules 45 and 48, such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity intent, preparation, plan, knowledge or identity.

4. For this assertion defendant relies on two federal cases, *United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973), and *United States v. Beechum*, 555 F.2d 487 (5th Cir. 1977). But these cases were overruled by *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), on the ground that they were incompatible with Rule 404(b), Federal Rules of Evidence, which deals with the admissibility of evidence of other crimes, wrongs, or acts. Rule 404(b) provides:

ing. No instruction on the burden of proof was submitted by defendant and none was given to the jury. Defendant's failure to request a jury instruction or object to the lack of an instruction that evidence of prior bad acts must be shown by clear and convincing proof precludes the issue from consideration on appeal.

Defendant also contends that the testimony of Parsons and Woodall was accomplice testimony that was not corroborated as required by § 77–31–18, which, though later amended, was applicable to the present offense. Section 77–31–18 provided:

A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient, if it merely shows the commission of the offense or the circumstances thereof.

■ An accomplice, as defined by § 76–2–202,[5] is one who is also criminally liable for the conduct charged. *State v. Berg*, Utah, 613 P.2d 1125 (1980); *State v. Comish*, Utah, 560 P.2d 1134 (1977). Mere presence, or even prior knowledge, does not make one an accomplice when he neither advises, instigates, encourages, or assists in perpetration of the crime. *State v. Gee*, 28 Utah 2d 96, 498 P.2d 662 (1972). Nevertheless, even if one has lent aid and encouragement, voluntary abandonment of his participation prior to the commission of the crime relieves him of criminal liability for its commission providing the abandonment was communicated to the remaining parties and occurred prior to a time when the crime had become so inevitable that its commission could not reasonably be stayed. *Harrison v. State*, Ind., 382 N.E.2d 920 (1978); *People v. Rybka*, 16 Ill.2d 394, 158 N.E.2d 17 (1959); *Hendrick v. State*, 229 Ind. 381, 98 N.E.2d 906 (1951); *State v. Peterson*, Minn., 4 N.W.2d 826 (1942). On these principles, Woodall was not an accomplice. Although Woodall took part in early discussions in Arizona, the record indicates that his decision to abandon all involvement in the illegal activity was made and communicated long before the commission of the crime for which defendant was charged. Woodall therefore could not be said to be an accomplice in the crime for which defendant was herein charged and convicted.

■ The State concedes Parsons' status as an accomplice. Parsons' testimony, however, was without question sufficiently corroborated to support defendant's conviction. Woodall corroborated the testimony that defendant was involved in the planning of the vending machine scheme. A Dorothy Pulley described how defendant paid her and two others to sign the incorporation papers to avoid having the names of the real owners made public. Employees of the business testified as to defendant's involvement with the Salt Lake City operation. The business records indicated the receipt of large amounts of moneys from the business by both defendant and Parsons.

---

*Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The later *Beechum* case held that the rule called for a two-step test: first, it must be determined that the evidence is relevant to an issue other than the defendant's character, and second, that the evidence possesses probative value that is not substantially outweighed by undue prejudice. However, *Beechum* did not require that the illegality of prior wrongs be shown by clear and convincing proof.

5. Section 76–2–202 provides as follows:

Criminal responsibility for direct commission of offense or for conduct of another.— Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

■ This Court has previously stated that the corroboration need not go to all the material facts as testified to by the accomplice, nor need it be sufficient in itself to support a conviction. However, the corroborating evidence must connect the defendant with the commission of the offense and be consistent with his guilt and inconsistent with his innocence. See *State v. Christean*, Utah, 533 P.2d 872 (1975); *State v. Vigil*, 123 Utah 495, 498, 260 P.2d 539, 541 (1953); *State v. Erwin*, 101 Utah 365, 120 P.2d 285 (1941). Based on these standards, Parsons' testimony was sufficiently corroborated.

Another contention made by defendant is that he should have been punished pursuant to the provisions of § 76–6–507, which proscribes deceptive business practices, because it is more specific regarding the illegal conduct for which defendant was convicted and has a lesser penalty than theft by deception. Defendant argues that where there are two statutes which proscribe the same conduct, and one is more specific with regard to the allegations charged than the other, it is necessary that a defendant be prosecuted under the more specific statute. Also, if two statutes proscribe the same conduct and one statute has a lesser penalty than the other, the defendant may only be punished to the extent of the lesser penalty.

Defendant cites *State v. Shondell*, 22 Utah 2d 343, 453 P.2d 146 (1965), which involved an analysis of the drug abuse control law and the Narcotics Drug Act, both enacted during the same session of the 1967 Legislature. Shondell had been charged with possession of the drug LSD, a misdemeanor under the drug abuse control law and a felony under the terms of the Narcotic Drug Act. This Court held that the clear, specific, and lesser penalty prescribed for the offense of possession of LSD was applicable, rather than the more severe penalty provided by overlapping provisions of the Narcotic Drug Act. The Court in *Shon-*

*dell* based its decision on the rule "that where there is doubt or uncertainty as to which of two punishments is applicable to an offense an accused is entitled to the benefit of the lesser."

■ Application of the *Shondell* standard, requiring a lesser punishment when there is doubt as to the applicable statute, is not appropriate in the present case. Reading the theft and deceptive business practice statutes, there is no doubt or uncertainty as to which of the two statutes is applicable to the facts of this case.

The crimes described in § 76–6–507 are distinguishable from the crime of theft by deception as committed by the defendant. The deceptive business practices defined as criminal include using or possessing for use a false weight or measure; selling or delivering less than the represented quantity or quality of a commodity or service; making a false or misleading statement in an advertisement addressed to the public; offering, by advertising or other means of communication to the public, property or services with intent not to sell or provide the advertised property or services at the offered price or in a sufficient quantity or at all; or other acts not relevant here.

Defendant has not specified which subsection of the deceptive business practice statute he relies upon in seeking the imposition of a lesser penalty, and we are unpersuaded that any of the conduct proscribed therein is the equivalent of the charges for which defendant was convicted. Defendant's conduct did not stop at merely offering to sell property with an intent not to deliver it or delivering to a customer a lesser quantity of a commodity or service. He took money from investors for the purchase of fruit juice vending machines and exercised control over that money with the criminal intent to permanently deprive them of it and not deliver a machine at all. This conduct clearly constitutes a theft offense and not merely a deceptive business practice.[6]

---

**6.** We do not, of course, mean to say that any businessman who fails to deliver merchandise or services according to a contract is guilty of theft by deception. A theft conviction requires proof of the intent to illegally and permanently deprive one of his property, not merely of a breach of the terms of a business agreement.

Defendant's final contention is that the evidence was insufficient to sustain his conviction. It is defendant's burden to establish that the evidence was so inconclusive or insubstantial that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime charged. *State v. Daniels*, Utah, 584 P.2d 880 (1978). This Court will review the evidence and all inferences which may be reasonably drawn therefrom in the light most favorable to the verdict of the jury. *Id.*

Defendant contends that the State did not show that defendant exercised control over anybody's property or that he created or confirmed an impression of fact that was false. We find, to the contrary, that the record amply supports the jury verdict in this case. The defendant received over $25,000 paid directly to him or to his wife for one day's work a week over a period of a few months. This money came from investors who did not receive the machines for which payment was made. Defendant's participation in the business had substantial support in the record. Defendant paid three persons not otherwise connected with the business to sign the incorporation papers. He also hired employees, participated in setting up the Salt Lake City office, directed employees, held sales meetings, controlled the finances and signed checks, and authorized payment for machines. He was not under the supervision of any other business associates. The evidence clearly showed that defendant's plan was knowingly to create a false impression that machines, when paid for, would be ordered and delivered, and knowingly, to promise performance which he did not intend to deliver.

Finally, defendant's contention that the State should have charged theft by embezzlement rather than theft by deception is without merit. Section 76–6–403 of the Utah Criminal Code enacted in 1973 provides that the offense denominated "theft" embraces the separate offenses previously known as larceny, embezzlement, false pretense, and others not relevant here. The verdict of theft by deception on eleven counts finds substantial support in the record.

CROCKETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.