## STATE v. LACK

No. 7400. Decided Aug. 26, 1950, (221 P. 2d, 852.)
Rehearing denied Nov. 10, 1950.

See 22 C. J. S., Criminal Law, Sec. 691. Trial judge's remarks to defendant on cross-examination as prejudicial, 65 A. L. R. 1271. See, also, 3 Am. Jur. 428.

*Newell A. Call,* Salt Lake City, for appellant.

*Brigham E. Roberts,* Dist. Atty., Salt Lake City, *Clinton D. Vernon,* Atty. Gen., *Allen B. Sorensen,* Asst. Atty. Gen., *Mark K. Boyle,* Asst. Atty. Gen. for respondent.

McDONOUGH, Justice.

Defendant was indicted for embezzlement of bottles of whiskey having a value in excess of $50. He was convicted, and he appeals.

On December 13, 1945, defendant took over as agent of the State Liquor Control Commission, package agency No. 78 in Salt Lake City. This agency was conducted in connection with a pharmacy at South Temple and E Streets, of which defendant and a partner became the owners on the aforesaid date. Defendant knew of a shortage which existed under prior management, as disclosed by the written agreement executed by him, for he agreed to pay all shortages which occurred prior to that date. However, at the trial on the charge of embezzlement he denied that he was aware of the extent of those shortages which were shown to aggregate $10,888. The accumulated shortages based on the retail value of the liquor, aggregated $37,805 at the time inventory was taken in March 1948. Evidence adduced revealed that the shortages were concealed by padding the sales reports. Upon sale of liquor the customer made out a sales

card showing the number of bottles, code number of the liquor, price per unit, total purchase price, the liquor permit number of the customer, and his name and address. These cards were required for accounting purposes. Defendant had a number of cards called "specials" which merely showed the amount, kind and price of liquor sold, but these cards were never sent to the commission. Such "specials" were included in the record of sales only when deposits of receipts were made. Inventories were taken by a representative of the commission subsequent to the close of a report period, and reconciled back to the end of the last report period. Defendant's bookkeeper reported to the field auditor the number of sales made between the date of report and the time of inventory, and included those "specials" in the column of sales along with other sales made for which deposits had not yet been reported.

Defendant made numerous sales in case lots to various clubs on which sales he collected a premium price, and divided such premium payment between himself and one or more other persons. In the accumulation of liquor for such sales, cases of the brands ordered were taken from the agency, stored in garages and hauled to the various clubs. When shortages appeared on the reports, demand for payment was made and payment of the shortages discovered on the reports was usually made promptly except during the early part of 1948 when the amounts were deducted from defendant's contract allowance for handling the agency.

In February 1948 the commission ordered an audit. The time for making such audit was postponed.

On the morning of March 2, 1948, the night watchman found a rear door to the pharmacy open, some liquor cases stacked on a stairway, and some bottles scattered on the floor of one store room. The watchman notified defendant. When he arrived he called the commission and declared "they have ruined me." When asked by the police officer

whom he referred to by "they," he said, "the politicians have ruined me." Lack told the police his place had been burglarized and that large quantities of liquor had been taken during the night. He suggested to the police that the liquor might have been taken to Price by persons he suspected of committing the burglary.

Upon the report of the alleged burglary in the newspapers, some persons who had passed the corner where the agency was situated, reported to the police what they had seen at the location and also the activities of the defendant during the night of the alleged burglary. Defendant reported to the police that he left the pharmacy at about 11:15 P. M. after locking up the place, and that he was the last person to leave. Two witnesses, including a cab driver, testified that defendant was observed in the pharmacy near the door turning off the burglar-alarm about 11:30 P. M., and that an automobile identified as his car was parked at the agency at that time.

Various witnesses who were in the vicinity of the agency who passed there at different times throughout the night, testified that they saw nothing hauled away from the agency. A number of taxicab operators who reported to the dispatcher by radio or by telephone at a cab stand at that intersection, waited at such station for 10 minutes up to a half hour, and saw nothing hauled away. The intersection was well-lighted. Defendant's car attracted some attention by reason of the fact that a door was left open and the dome light was on, after closing time at the pharmacy. About 12:30 A. M. of March 2, 1948, a cash register which was identified as the one owned by defendant and used in his business at the pharmacy was found by a taxicab operator on a street some distance from the pharmacy. This evidence was used to show that the activities described by defendant as a "burglary," occurred prior to a half hour past midnight. Up to that time cab operators were within view of the building and the entrance to the agency, every few

minutes. This evidence was introduced by the state to establish the contention that the "burglary" was faked by defendant for the purpose of concealing the liquor shortage.

The errors on which defendant relies for reversal, may be grouped as (a) procedural errors which precluded the state from proceeding to trial (b) the use of incompetent evidence, (c) misdirection of the jury, and (d) improper conduct of the court.

In the first category, appellant contends that the indictment and the trial thereunder, were invalid by reason of failure to obtain the consent of the governor to the proceeding. He relies on Sec. 46—0—70, U. C. A. 1943, a section of the Liquor Control Act, which provides: "Except with the written consent of the governor *no action or proceeding* shall be taken against any member or members or against any official or vendor of the commission for anything done or omitted to be done in or arising out of the performance of his or their duties under this act." (Italics added.)

The contention of appellant is without merit. The quoted provision of the statute in question is a part of a chapter of the act which relates to its administration and to the powers and functions of the Liquor Control Commission. It grants a limited and conditional waiver of the immunity of the state and its officials to civil suit. This is so palable from the context of the provision as to raise a doubt as to whether the contention of defendant is seriously made. To argue that the section quoted gives an official of the commission or any agent thereof immunity from criminal prosecution unless the governor consents thereto, is to ascribe to the Legislature an intent to give the commission power to loot the state with impunity provided only the chief executive consents thereto. Clearly nothing was farther from the legislative mind when the cited section was enacted.

Appellant next contends that the trial court should have

granted his demand in entirety for a bill of particulars, wherein he demanded copies of invoices, delivery sheets, inventories, ledger sheets, vendor's reports and other evidentiary matters. As stated by this court in *State v. Jameson*, 103 Utah 129, 134 P. 2d 173, 175, "The ■ bill of particulars need not plead matters of evidence." Sec. 105—21—9 (1), U. C. A. 1943, was designed to enable a defendant to have stated the particulars of the charge which he must meet, where the short form of indictment or information is used. It was not intended as a device to compel the prosecution to give an accused person a preview of the evidence on which the state relies to sustain the charge.

The defendant also made a motion to have the court impound certain documents for examination by defendant prior to trial. He alleges that the court abused its discretion in denying such motion. No abuse of discretion appears from the record. It is within the ■■ sound discretion of the trial court whether a defendant shall be allowed or denied the privilege of examination of evidence in the possession of the prosecution prior to trial. See *State* v. *Payne*, 25 Wash. 2d 407, 171 P. 2d 227, 175 P. 2d 494; and *People ex rel. Lemon* v. *Supreme Court*, 245 N. Y. 24, 156 N. E. 84, 52 A. L. R. 207.

Complaint is also made that defendant was deprived of a fair trial by reason of the refusal of the trial court to compel a witness for the state who appeared on special process from the state of Texas, to remain during the course of the trial. The witness, E. M. Rogers, ■ who had been bookkeeper for defendant, was required to remain an extra day during which time the defendant's counsel had ample opportunity to examine him. It is urged that it was not until the close of the trial that defendant became aware of the fact that there was a shortage of $10,888 when he took over the business, and

that the witness Rogers was responsible for it. Defendant did not ask for any process to have the witness in question testify in his behalf. During cross examination of this witness, he was not asked as to what he had done with the records of defendant which were allegedly destroyed by him. After some further examination following the refusal of the court to require the witness to remain until the close of the trial, counsel for defendant stated: "We have no further use for the witness. your Honor." Defendant's contention that he was prejudiced by excusing the witness prematurely is not sustained by the record.

Appellant strenuously argues that the evidence that defendant sold case lots of liquor to various clubs and that he split the "premium payments" with certain others, shows other offenses not pleaded and for which defendant was not prepared to go to trial. This evidence was offered and received to show the scheme or plan whereby defendant committed embezzlement of the whiskey. The fact that misappropriations were shown to have occurred over the period during which the scheme was in operation, is not ground for reversal. Under well settled principles the evidence in question was properly received. See 1 Wharton's Criminal Evidence, Sec. 352. Defendant was an agent of the state of Utah to sell the liquor in accordance with the liquor laws. The state showed that a considerable quantity of liquor was missing, valued at least $27,000. To complete the proof of embezzlement, the state sought to establish the fact that defendant secretly removed large quantities from the agency and stored them in a garage from which they were subsequently sold.

It is urged that proof that he sold the liquor and pocketed part of the "premium payments", was incompetent, since he was not charged with embezzlement of the proceeds of sale but of the whiskey itself. Such evidence,

however, was competent to show the intent to embezzle when he hauled the liquor from the store and secretly made sales to clubs. The state was not required to prove which particular bottles were appropriated to his own use out of thousands of bottles delivered to him. There was abundant proof that he had taken out large quantities in case lots and none of such liquor was returned, but the shortages were concealed by the process of padding records and making false entries to mislead the field auditor of the commission. The fact that he took "premium payments" is indicative of an intent to treat the liquor as his own property, and his attempts to conceal his operations manifested an intent to defraud.

It is next contended that the court misdirected the jury to the prejudice of the defendant. This assignment of error is addressed to Instruction No. 8, which reads as follows:

"You are further instructed that the mere proof of receipt of the whiskey and the failure to account for the same are not sufficient in and of themselves to show embezzlement.

"The gist of the crime of embezzlement is the intent to defraud, and an appropriation without such intent gives rise only to a civil cause of action. However, you are instructed that the law presumes that every man intends the natural and probable consequences of his own acts; and if you find from the evidence and beyond a reasonable doubt that the defendant unlawfully converted the whiskey, charged in the indictment to have been embezzled, to his own use, you will be authorized to infer therefrom the criminal intent and that he did at the time intend to embezzle and convert the same to his own use and to deprive the Utah Liquor Control Commission of it. The intent with which an act is done may be proved by direct and positive testimony, or the intent may be inferred from all

the facts and circumstances surrounding and attending the act as shown by the evidence in the case.

"The intent in this case must be determined from the evidence given before you; and unless you are convinced beyond a reasonable doubt by the evidence that the defendant had the intent to defraud, you must find him not guilty.

"*However, if you believe from the evidence and beyond a reasonable doubt that the defendant received whiskey as charged in the indictment, under an agreement that he should act as the agent of the Utah Liquor Control Commission, and should sell the whiskey and pay over to and deliver to the said Utah Liquor Control Commission the proceeds which the defendant should secure from the sale of whiskey, and if you further believe from the evidence and beyond a reasonable doubt that defendant sold said whiskey as his own property and not as the agent for the Utah Liquor Control Commission or that at the time of the said sale the defendant had the fraudulent intent to appropriate the proceeds of said sale to his own use and benefit without the consent of the said Utah Liquor Control Commission, you should find the defendant guilty of embezzling the whiskey.*"

The portion of the instruction which we have italicized is the part which defendant claims constitutes misdirection as a matter of law.

Addressing himself to such portion of the instruction defendant's counsel contends that the jury were thereby directed (1) to find the defendant guilty although he had no fraudulent intent, and (2) find the defendant guilty of embezzling bottles of whiskey as charged in the indictment, if he in fact did not embezzle the bottles of whiskey but rather the proceeds from the sale thereof.

It should be pointed out at the outset that Instruction 8

was excepted to in whole without pointing out to the trial court wherein or what part of it was allegedly erroneous. such general exception is of no avail unless the instruction as a whole is objectionable. *State* v. ■ *Warner,* 79 Utah 500, 291 P. 307.

However, we shall disregard the generality of the exception and address ourselves to the substance of the assignment. It may be conceded that if the italicized portion of the instruction were lifted from its context, the first contention of defendant would be correct. ■ However, in light of the first portion of the instruction whereby the jury were charged that mere proof of receipt of the whiskey and failure to account for it, are not sufficient in and of themselves to show embezzlement, and of the emphasis placed upon the necessity of proving the intent to defraud, we see no possibility that the jury could have been misled by the criticized portion of the instruction. This conclusion is fortified by the fact that in the 7th instruction, wherein the court sets forth the elements of the crime charged which must be proved to sustain a conviction, there is recited among them (1) that the defendant appropriated the whiskey received from the Liquor Control Commission to his own use, and (2) that at the time of so appropriating it, he had an intent to defraud the Liquor Control Commission.

Likewise, instructions 7 and 8 and the charge as a whole, precluded any misconception on the part of the jury to the effect that although they were not convinced of defendant's intent to defraud at the time of the taking of the whiskey, they might find him guilty as charged if convinced that he subsequently embezzled the proceeds of the sale of the whiskey.

Prejudicial error is asserted by reason of remarks made by the trial judge during the course of the trial. It is contended that the trial judge threatened the defendant and

thereby prejudiced the jury. During his examination as a witness, defendant repeatedly volunteered remarks not responsive to the questions asked. In several instances this was done in disregard of the efforts of his own counsel to elicit testimony or to keep the tesimony within the limits of a particular subject of inquiry. Upon motion by the district attorney that an unresponsive statement be stricken, the following occurred:

"THE COURT: Mr. Lack, I am not only going to strike your testimony, but I am going to do something to impress you with it. You will have to listen and quit just volunteering.

"DEFENDANT: I get a little sore—I can't hear you, sir.

"THE COURT: And you are going to make us sore, and we can do something about it. Listen to counsel and answer those questions, and if you get sore we will give you a chance to take your recess to cool off."

Though the last quoted remark of the judge may evidence a departure from strict judicial decorum, we find nothing in it which is in any way calculated to prejudice the jury. The trial judge has a duty to act impartially and to manifest self-control. He, however, also has a duty to see to it that witnesses including the parties shall answer proper questions fairly and responsively and not wilfully digress from the subject of examination. When a witness repeatedly offends, it may be necessary for the court to admonish him by threats of punishment when courteous admonitions seem to be ineffective. The trial court might have indicated that it was his duty to impose some form of discipline if the witness refused to make responsive answers, without the particular remarks which he uttered to accomplish such purpose. However, we find no basis for the contention that defendant was prejudiced thereby.

The judgment is affirmed.

PRATT, C. J., and WADE, WOLFE and LATIMER, JJ., concur.