[No. 2654-1. Division One. April 21, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL LOWELL
HARP, *Appellant*.

*Kempton, Savage & Gossard, Barbara M. Durham,* and
*Robert W. Ferguson,* for appellant (appointed counsel for
appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Roy N.
Howson, Deputy,* for respondent.

WILLIAMS, C.J.—The information in this case contains
two counts. The first charges Carl Lowell Harp with com-
mitting first-degree murder and the second with commit-
ting first-degree assault. The trial resulted in a verdict of
guilty upon both counts, and Harp was sentenced to two
consecutive life sentences. From the judgment entered
upon the verdict, Harp appeals.

On May 14, 1973, Abraham Saltzman was shot and killed
while driving south on a highway in King County. A few
minutes later, a bullet pierced the left arm of John Mott
while he was driving through the same area. The next day,
the police found four .308 caliber cartridge casings in the

vicinity of the shootings on the east side of the highway. On July 31, Harp's wife led Bellevue detectives to the place where the casings had been found and then to a bridge over the Snohomish River, under which they found several .308 caliber cartridges and a .308 caliber rifle, wrapped in cellophane. Fingerprint experts identified fingerprints which were on the cellophane and the rifle as those of Harp, and ballistics experts determined that the four shell casings which were found east of the highway had been used in the rifle.

The information charging Harp with the two crimes was filed on August 31, 1973, and trial was set for October 16. On October 2, the attorney who had initially been appointed to represent Harp was replaced by another who, on the next day, moved for a continuance of the trial date. This motion was granted, and trial was set for October 18. On October 10, Harp's substitute attorney moved for another continuance, and, in support of the motion, stated that it was required because of the seriousness of the alleged crimes, the endorsement of over 35 witnesses by the State, and the disappearance of Harp's wife who had led the police to the critical exhibits. She has stated in her brief to this court that the complexity and length of the trial hampered her in presenting a viable defense.

The State responded to the October 10 motion for continuance by stating that, in compliance with the criminal rules (CrR 4.5; CrR 4.7(a), (b)), it had given the defense complete information on all evidence that it had in its possession, including the analysis of the fingerprints found on the rifle. The State also advised the court and counsel that it expected to find the missing person who had supplied the rifle to Harp and promised to submit his statement to the defense promptly.

Harp assigns error to the refusal of the trial court to further continue the trial date. On first impression, it may seem that the trial followed too closely upon the filing of the information and appointment of substitute trial counsel. Probably the most formidable task facing the defense was

to work up its position on the 35-odd witnesses endorsed by the State. An interview with the wife may have been helpful and, undoubtedly, counsel could have used additional time to develop leads to other evidence.

 Article 1, section 10 of the Washington State Con‹ stitution requires that accused persons be brought to trial without unnecessary delay. Whether a delay is necessary is to be determined upon the basis of the following observations made in *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974):

> [W]e have noted that continuances and compulsory process in criminal cases involve such disparate elements as surprise, diligence, materiality, redundancy, due process, and the maintenance of orderly procedures; and that this court leaves the decision largely within the discretion of the trial court, to be disturbed only upon a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied. *State v. Edwards*, 68 Wn.2d 246, 412 P.2d 747 (1966); *State v. Moore*, 69 Wn.2d 206, 417 P.2d 859 (1966); *State v. Schaffer*, 70 Wn.2d 124, 422 P.2d 285 (1966); *State v. Derum*, 76 Wn.2d 26, 454 P.2d 424 (1969).
>
> We have also noted, as has the United States Supreme Court, that there are no mechanical tests for deciding when the denial of a continuance violates due process, inhibits a defense, or conceivably projects a different result; and, that the answer must be found in the circumstances present in the particular case. *State v. Cadena*, 74 Wn.2d 185, 443 P.2d 826 (1968).

(Footnote omitted.)

There is no suggestion that the State did not cooperate continuously and fully as required by CrR 4.7, so it may be assumed that the defense had all of the information about the witnesses which the State had. Defense counsel did not tell the trial court anything about the endorsed witnesses, the materiality of their expected testimony or, generally, what time and effort she would need to meet their testimony. Neither was the court told, in any significant way, what possible benefit that there would be to the defense in securing the presence of the missing wife, or what leads, if

any, there were to develop. Accordingly, there is no basis for the assertion that the trial court abused its discretion in not granting a further continuance. *State v. Knott*, 6 Wn. App. 436, 493 P.2d 1027 (1972); *State v. Sutherland*, 3 Wn. App. 20, 472 P.2d 584 (1970).

The issue of impeachment arose from the following facts: Approximately 3 months after the shots were fired, Harp was confined in the Snohomish County jail on other charges. While there, he talked to another prisoner, John Klapproth. Klapproth was called as a witness by the State, and testified that Harp had admitted the shootings. He also testified that Harp said that if he had known that the victim was a Jew and his wife would have been there, he would have shot her too. On cross-examination, Harp's attorney attempted to show that Klapproth was biased against Harp by asking if he were a member of the American Nazi Party, and whether it was he, not Harp, who commented about the nationality of the victim. Klapproth answered, "No." The defense then offered to produce a witness who would testify that Klapproth had been seen at local Nazi Party meetings. The trial court correctly ruled that the offered testimony was inadmissible, because it was extrinsic evidence of a collateral matter.

On cross-examination, the answer of a witness to something which is collateral to any material issue in the case is conclusive and may not be contradicted by other evidence. *State v. Putzell*, 40 Wn.2d 174, 242 P.2d 180 (1952); *State v. Nolon*, 129 Wash. 284, 224 P. 932 (1924). The test is: "Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?" *State v. Bassett*, 4 Wn. App. 491, 493, 481 P.2d 939 (1971). The evidence that Klapproth was involved in Nazi activities had nothing to do with the question of whether Harp shot Saltzman and Mott. Furthermore, there was no testimony in the record, and none was offered, that Harp was Jewish, or that the evidence would have tended to prove Klapproth's bias against Harp.

Harp has filed two supplemental briefs, which we have carefully considered.

The judgment is affirmed.

CALLOW and ANDERSEN, JJ., concur.

Petition for rehearing denied July 23, 1975.

Review denied by Supreme Court September 23, 1975.