The STATE of Utah, Plaintiff and Respondent,

v.

Edwin MITCHELL, Defendant and Appellant.

No. 14471.

Supreme Court of Utah.

Nov. 10, 1977.

William W. Barrett, Asst. Atty. Gen., R. Paul Van Dam, Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

Larry R. Keller of Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

MAUGHAN, Justice:

Defendant appeals from his conviction by a jury of the crime of aggravated robbery, a first degree felony, Section 76–6–302, Utah Criminal Code. We reverse and remand for a new trial. All statutory references are to U.C.A.1953.

By information defendant was accused of using a deadly weapon or facsimile thereof, to wit, a revolver to rob Brenda Moore Bradley and Barbara Harris on June 30, 1975. In a bill of particulars the State alleged that defendant together with one Kenneth Douglas Wells, entered the residence of Barbara Harris and by use of a deadly weapon, a revolver robbed Harris and Bradley. Specifically the State alleged defendant, together with Wells, took from the person or immediate presence of Bradley, the approximate sum of $138, in cash; and the approximate sum of $180, from Harris in cash.

The evidence adduced by the State indicated that defendant and Wells entered the residence with guns and robbed not only Harris and Bradley but other persons also present. In addition, a .22 caliber pistol in the bedroom, hidden under a pillow, was also taken. Subsequently, defendant and Wells were apprehended in Tucson, Arizona. Wells was arrested, while seated in his automobile. The .22 caliber pistol was found in the vehicle. Defendant was found by the Tucson police in a hotel in the vicinity where Wells' car was parked. Defendant was unconscious from an overdose of heroin.

Defendant called Wells as a witness. Defendant also testified substantially the same as did Wells. They both admitted going to the residence, which they described as a "dope house," for the purpose of buying heroin. Defendant testified he had previously purchased drugs from Bradley. He stated that on this occasion Bradley informed him Harris had the drugs. He purchased drugs from Harris and paid her sixty dollars for two bags of heroin. Defendant immediately administered to himself one bag and gave the other to Wells. Defendant was of the opinion the narcotic was no good and engaged in an argument with Bradley concerning the quality of the merchandise.

Defendant testified that during the course of the argument he proclaimed he was tired of arguing. He removed a clear plastic bag containing balloons of heroin from a table, hailed his companion Wells, and the two departed. Defendant insisted he took only the heroin and that he had no firearms of any kind. The testimony of defense witness, Wells, coincided with defendant's.

Defendant contends that the trial court erred by permitting the prosecution to present evidence not specifically described in the information or bill of particulars. Over defense counsel's objection, the trial court allowed testimony involving other crimes committed on the premises at the time Harris and Bradley were robbed, viz., the crime charged in the information and bill of particulars. There was testimony that other individuals present on the premises were robbed and the .22 caliber pistol was taken from the bedroom.

A bill of particulars need not plead matters of evidence, Section 77–21–9(1) was designed to enable a defendant, where the short form information is used to have the stated particulars of the charge which he must meet. The bill of particulars was not intended as a device to compel the prosecution to give an accused person a preview of the evidence on which the State relies to sustain the charge.[1]

The testimony concerning the other allegedly criminal acts committed by defendant during the course of the commission of the crime with which he was charged, were, in fact, eyewitness descriptions of the events that occurred. If the State elects not to charge an accused with the additional crimes, this is not a ground to exclude testimony of those crimes that constituted an integral part of the acts committed by an accused during the course of the crime with which he is charged. Any attempt to segment the testimony of the witnesses herein would have seriously impaired their ability to relate to the jury their perception of the events as the drama unfolded. The State was not required to reveal this evidence in advance to defendant by means of the bill of particulars.

Defendant further contends there was prosecutorial misconduct in questioning defense witness, Wells, which constituted prejudicial error.

The prosecution witnesses had testified defendant and Wells had guns when they entered the premises. Before defendant and Wells vigorously denied they had such weapons at the time of the alleged commission of the crime, or thereafter during the time they were in Arizona.

In the cross-examination of witness Wells, the prosecutor queried about Wells' ownership or possession of a gun. Wells responded in the negative to these questions. The prosecutor then asked: "you were arrested for armed robbery, doesn't that mean you had a gun with you?"

An objection was asserted to this question, which was sustained by the court. The defendant moved for a mistrial on the ground that the questioning of Wells concerning his arrest in Arizona prejudiced defendant's right to a fair trial. Defendant urged that the questioning violated Rule 55, U.R.E.

Under Rule 55, U.R.E., evidence that a person committed a crime on a specified occasion is admissible when relevant to prove some other material fact. Wells had specifically denied possession of a weapon and any evidence discrediting this denial was relevant to this issue. If the questioning and responses are reviewed within the context of the record, it is revealed that the cross-examination was directed towards the possession of a gun by Wells. The questioning was not for the purpose and did not have the effect of implicating either defendant or Wells with other crimes or to degrade them and give the jury the impression they had a propensity for crime. The sole purpose was to discredit their vigorous denial of knowledge or possession of weapons. The cases cited and relied upon by defendant are distinguishable.[2]

Defendant further contends the trial court erred by denying defense counsel upon cross-examination of victim, Bradley, the right to inquire whether she had used heroin on the date of the alleged robbery.

**1.** *State v. Lack*, 118 Utah 128, 134, 221 P.2d 852 (1950); *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872 (1964); *State v. Moraine*, 25 Utah 2d 51, 475 P.2d 831 (1970).

**2.** *State v. Kazda*, 14 Utah 2d 266, 382 P.2d 407 (1963); *State v. Dickson*, 12 Utah 2d 8, 361 P.2d 412 (1961).

**1354**

Defendant cites and relies on Rule 20, U.R.E. and Section 78–24–1; the State relies on Rule 45, U.R.E.

Section 78–24–1, provides:

. . . although, in every case the credibility of the witness may be drawn in question, by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character or truth, honesty or integrity, or by his motives, or by contradictory evidence;
. . .

Rule 20, U.R.E., provides:

Subject to Rules 21 and 22, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence concerning any statement or conduct by him and any other matter relevant upon the issues of credibility.

Rule 45, U.R.E., provides:

Except as in these rules otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered.

In *State v. Mason*[3] this Court ruled it was within the legitimate scope of cross-examination to inquire whether a witness had been under the influence of a narcotic drug.

. . . it is within the scope of cross-examination of a witness to inquire as to anything which may reasonably be regarded as affecting the accuracy or credibility of his testimony. This includes matters which would test his ability to observe and understand, or his memory, or his capacity to adequately relate his knowledge of the facts. . . .

The record indicates a discrepancy in the testimony between witness Bradley and the witnesses Timms, viz, whether defendant and Wells had weapons when they entered, or acquired the .22 pistol later. Furthermore, an integral part of the defense was the claim the residence was a "dope house," and the habitues were involved with narcotics. Under the circumstances of this case, the probative value of the excluded evidence outweighed any potential prejudice which might inure to the witness, and the trial court abused its discretion. Defendant was entitled to determine whether Bradley was under the influence of drugs and if so, the effect the narcotic might have had on her ability to perceive the facts.[4]

Finally, defendant contends the action of the trial court in excluding the testimony of a defense witness that he had purchased narcotics from witness, Harris, constituted prejudicial error.

Witness, Harris, testified she had never lied under oath and that she had not lied at the preliminary hearing, where she denied she had ever sold heroin. Defense counsel called as a witness, Darryle Riddle, who testified he had worked as an undercover agent for the police during September and November 1975. Mr. Riddle made undercover narcotics purchases as one of his duties. He testified he knew witness, Harris; at this point, the prosecution requested to voir dire the witness outside the presence of the jury.

The prosecution determined that Riddle was not engaged by the police on June 30, 1975, the day of the crime, and, therefore, objected to the testimony. Defense counsel made a proffer of the testimony of Riddle for the record, viz, he would testify he had purchased heroin from Harris at her residence on September 29 and October 2 or 3 of 1975. Defense counsel vigorously asserted he was entitled to impeach her statements that she had never sold heroin. Counsel pointed out his defense was based on the claim that no robbery occurred, but there was a theft of heroin. The prosecu-

---

**3.** Utah, 530 P.2d 795, 797 (1975).

**4.** *Doe v. State*, Alaska, 487 P.2d 47, 58 (1971).

tion witnesses insisted there was no heroin, and defense counsel urged that to receive a fair trial, defendant was entitled to present evidence that Harris had, in fact, lied.

■ The State relies on the rule that the answers of a witness upon cross-examination on any irrelevant or collateral matter are conclusive and binding, and the witness may not be contradicted or impeached upon an immaterial or collateral matter of issue.[5]

What is a collateral matter or issue? . . . It is generally stated that facts which would be independently provable are not collateral. Obviously, facts which are relevant to the issues of the case come within this category. In addition, facts independently provable to impeach or disqualify the witness, whether or not introduced to contradict him, are admissible. For example, testimony may be introduced to show bias, interest, conviction of a crime or lack of capacity or opportunity for knowledge of the facts related.

Finally, a third kind of fact must be considered. Suppose a witness has told a story of a transaction crucial to the controversy. To prove him wrong in some trivial detail of time, place, or circumstance is 'collateral.' But to prove untrue some facts recited by the witness that if he were really there and saw what he claims to have seen, he could not have been mistaken about, is a convincing kind of impeachment that the courts must make place for, although the contradiction evidence is otherwise inadmissible because it is collateral under the tests mentioned above. To disprove such a fact is to pull out the linchpin of the story. So we may recognize this third type of allowable contradiction, namely, the contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true.[6]

■ The proffered testimony of witness Riddle was not impeachment of witness, Harris, on a collateral issue. There were two versions as to what occurred at the Harris' residence. According to the prosecution two armed robbers charged into the home, terrorized the occupants, and took cash from victims Harris and Bradley. Narcotics were not present or involved. According to the defense, no weapons were involved, no cash was taken, two dissatisfied customers stole a bag of narcotics as a culmination of an argument over the quality of the goods purchased. Whether Harris, in fact, distributed narcotics from her residence was, indeed, a relevant issue in the case, which defendant was entitled to prove for a purpose independent of impeaching Harris' testimony; thus, it was not a collateral issue.[7]

Since this excluded evidence would probably have had a substantial influence in bringing about a different verdict, the judgment must be reversed.[8] The defendant is entitled to an opportunity to present that evidence which tends to corroborate his version of the incident.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (dissenting).

On January 8, 1976, appellant was convicted of the crime of aggravated robbery, a first-degree felony[1] and sentenced to an indeterminate term at the Utah State Prison of not less than five years. He now appeals the conviction, claiming the following errors:

(1) The trial court erred in admitting evidence not named or described in the Information or the Bill of Particulars.

---

5. *Davenport v. State*, Alaska, 519 P.2d 452, 454 (1974).

6. Id. pp. 454–455 of 519 P.2d.

7. See *State v. Harp*, 13 Wash.App. 273, 534 P.2d 846, 849 (1975).

8. Rule 5, U.R.E.

1. U.C.A.1953, 76–6–302 (1977 pamphlet).

(2) The trial court erred in refusing cross-examination of a witness regarding her use of heroin on the date of the robbery.

(3) The trial court erred in permitting the prosecutor to question appellant concerning his arrest in Arizona for which there was no conviction.

(4) The trial court erred in refusing to allow testimony that would indicate the witness had committed perjury.

The first claimed error has been well settled in this State for many years. Our statute[2] requires only that the particulars of the crime charged need be given in the Bill of Particulars. It is not necessary that the evidence to be used in the prosecutor's case be set out in detail.[3] As to the Information, the statute[4] provides that it is sufficient if it informs the defendant of the nature and cause of the charge against him. This is supported by our case law,[5] a most recent case in point being *State v. Moraine*.[6] It was there stated:

> If the information under which a defendant is to be tried is sufficiently clear as to what the crime is, then the prosecuting attorney need not furnish any bill of particulars at all. . . . Where the court orders the prosecuting attorney . . . to give matters not required . . . the court may excuse the failure to furnish such material by permitting the evidence to be introduced, . .

.　.　.　.　.

In the instant case, the Information charged the defendant with aggravated robbery of Brenda Bradley and Barbara Harris on June 30, 1975, with the use of a revolver. In addition, the Bill of Particulars listed all the witnesses who were at the scene of the robbery, including witnesses the State did not intend to call. This was entirely sufficient to put appellant on notice that evidence relating to the other people present would be brought forth at trial. In *U. S. v. Mackey*,[7] the Fifth Circuit Court of Appeals held:

> . . . the exercise of this (the court's) discretion cannot be reversed on appeal unless the court concludes that the 'defendant was actually surprised at the trial and thus that substantial rights of his were prejudiced by the denial.'

Appellant can hardly claim surprise since he did not deny having been at the Harris home when the crime occurred. He was in a position to know who was there at the time and what he should be prepared to defend against. It is not necessary that each person robbed and each item taken be listed in the Information. Such facts are not elements of separate crimes but are surrounding circumstances that explain and prove the offense charged. The evidence was properly admitted, and no error was committed.

Appellant, during the course of cross-examination, asked the witness, Brenda Bradley, if she were using heroin on the day of the robbery. The trial court refused to permit this evidence and appellant claims it was pertinent to her credibility under Rule 20, Utah Rules of Evidence (1971). However, Rule 20 is subject to the qualification of Rule 45 which provides that even if credibility may be affected, the trial court has the discretion to deny admission of the information when the prejudicial effect far outweighs the probative value of the testimony.

This Court has stated that it is permissible to inquire about the use of drugs that would affect the physical or mental condition of the witness, in order to test the

---

**2.** U.C.A.1953, 77–21–9(1); *see also State v. Solomon*, 93 Utah 70, 71 P.2d 104 (1937) holding that the same strict rules do not apply to the Bill of Particulars as apply to indictments and informations.

**3.** *Wong Tai v. U. S.*, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

**4.** U.C.A.1953, 77–21–8.

**5.** *State v. Winters*, 16 Utah 2d 139, 396 P.2d 872 (1964); *State v. Lack*, 118 Utah 128, 221 P.2d 852 (1950).

**6.** 25 Utah 2d 51, 475 P.2d 831 (1970).

**7.** 551 F.2d 967, 970 (5th Cir. 1977).

memory of the witness or his capacity to adequately relate knowledge of the facts.[8] While it may have been proper to admit the disputed testimony, the qualification of Rule 45 gives the trial court the discretion to refuse it. And that discretion should not be tampered with by this Court unless the appellant shows that his rights were substantially prejudiced because of the trial court's actions. In the instant case, appellant has failed to meet this test.

The witness was only one of several witnesses, and the factual accounts given by the other witnesses were substantially the same as the witness whose testimony is questioned here. Drug use by the witness has no direct bearing on the *elements* of the crime with which appellant was charged and, therefore, was a collateral matter that the trial court could have properly determined did not have enough probative value to justify taking the risk that the entire testimony of Ms. Bradley might be discounted merely because she admitted to the use of heroin. Heroin users can be robbed as easily as anyone else, but such evidence (the use of heroin) can also have the effect of prejudicing a jury to the point where nothing the witness says will be believed because of the stigma that is attached to drug users. Rule 45 is intended to protect against the possibility of this kind of harm, and the trial court made no error by invoking the rule here.

Even if it be admitted that it was error to sustain the objection (which I do not do), the appellant cannot validly claim on this appeal that it was prejudicial error. He made no tender of what the answer would be. For all we know, the answer would have been a flat "no." The specific question was, "On June 30, 1975, when this incident occurred, had you used any heroin?" There was no tender of proof that the witness had used any drug that would have affected her faculties to know and understand the things which there occurred. It was merely a red herring drawn across the testimony in the hope that the jurors might get the idea that the witness herself was a law violator. I think it lay within the discretion of the trial court to refuse to permit the inquiry into the collateral matter and was, therefore, not error; and I think beyond any shadow of a doubt that, as revealed by the record, it was not prejudicial.

Evidence was admitted during testimony that appellant had been arrested for crimes in the State of Arizona for which he had not been convicted. Appellant claims this admission amounted to prejudicial error.

It is the rule in this State that the scope of cross-examination by the prosecutor is within the trial court's discretion, and such discretion will not be overturned on appeal, absent a showing of abuse.[9] Rule 55, Utah Rules of Evidence (1971) provides that evidence of other crimes or wrongs is admissible when relevant to prove some other *material* fact. The only fact sought to be proved by the prosecutor's questions was that a gun identical to that alleged to have been stolen and used in the robbery was found in appellant's possession during a search by the Arizona police when he was arrested. This was material to the case because appellant had consistently denied having a gun at any time and denied using any weapon to commit the robbery. The gun was a vital element to prove the charge of aggravated robbery, and admission of the evidence of the Arizona arrest was proper under these circumstances.

Other jurisdictions have adopted this view as well. In *Holland v. Briggs*,[10] the defense tried to prevent questions alluding to previous assaults. It was held proper to

---

**8.** *State v. Mason*, Utah, 530 P.2d 795 (1975). While this case dealt specifically with drug influence while on the stand, it is our opinion that it is also proper to permit examination as to the influence of drugs on the day the crime was committed to assure that the witness' memory was not impaired, if the trial court deems it relevant.

**9.** *State v. Anderson*, 27 Utah 2d 276, 495 P.2d 804 (1972); *State v. Belwood*, 27 Utah 2d 214, 494 P.2d 519 (1972).

**10.** 166 Mont. 278, 532 P.2d 411, 413 (1975).

admit the testimony to show the sequence of events and general state of mind. The court there distinguished the general rule by saying that evidence of other crimes is admissible if their *omission* would impair the jury's understanding.[11] In the instant case, the jury would have had a difficult time sorting the testimony of the witnesses that appellant used a gun from the testimony of appellant that he never had a gun unless the prosecutor had been permitted to show the sequence of events that led to appellant's arrest in Arizona where the gun in question was found in his possession.

This Court established its rule many years ago in the case of *State v. Nemier*.[12] There, at p. 312 in the Utah Reports, at p. 329 in the Pacific Reports, this Court stated:

> . . . It is universally recognized that the state may not prove other similar offenses committed by accused merely to show his bad character and propensity to commit similar crimes, . . . It is, however, recognized that *if the facts which constitute the collateral offense are relevant, that is they inherently tend to establish any of the necessary elements of the crime charged, . . . proof of such facts is admissible, . . .* [Emphasis added.].

Appellant sought to bring in the testimony of an undercover narcotics agent who would have testified that three months after the robbery, Barbara Harris sold him heroin. In this way, appellant tried to impeach Ms. Harris' testimony for she had stated that she never sold heroin. This testimony would have been relevant for impeachment purposes if Ms. Harris were being tried for selling narcotics, but in a trial for armed robbery, such evidence, at the most, would be only collateral and have no direct bearing on the issue of the case.

In *Banta v. Superior Court of Maricopa County*[13] it was held that "A witness cannot be impeached by producing extrinsic evidence to contradict the testimony concerning a collateral issue." And, again, in *State v. Superior Court*[14] the Arizona Supreme Court stated:

> . . . the use of character evidence to impeach a witness may not extend to the showing of a specific prior bad act for which the person was not convicted of a felony.

The reason for this conclusion is that the matter on which the witness was impeached was merely a collateral matter, not a material one, and the prejudicial effect resulting therefrom far outweighed the benefits of such impeachment. Again, at page 949, the Arizona court continued:

> The substantive use of specific bad acts of a witness is also barred because as a general proposition they have little relevance to the merits of the present action and may be extremely prejudicial.

This Court has never dealt squarely with this particular point, but the Arizona cases appear to state the better rule. Other jurisdictions also support the view that a witness cannot be impeached concerning facts collateral to the issue. In *State v. Johnson*[15] it was stated that whether a matter is collateral or not depends on whether or not the party cross-examining the witness is entitled to prove it in support of his case.

In the instant matter, the appellant was not entitled to prove that the witness was a heroin user or distributor, because such was not material to his defense. Whether the witness used or sold drugs and, subsequently, lied about it in a case such as this one does not prove that the witness lied about the armed robbery for which appellant was being tried. To permit a witness to be impeached by showing prior bad acts for which the witness has not been charged and

---

11. Id.; see also 66 A.L.R.2d 806, 826.

12. 106 Utah 307, 148 P.2d 327 (1944).

13. 112 Ariz. 544, 544 P.2d 653, 654 (1976).

14. 113 Ariz. 22, 545 P.2d 946, 948 (1976).

15. 192 Wash. 467, 73 P.2d 1342 (1937), see also *Dewey v. Funk*, 211 Kan. 54, 505 P.2d 722 (1973) where it was held that the sexual morality of a witness testifying in a rape case had nothing to do with the *veracity* of the witness.

which may force an admission of illegal conduct, would deter such witnesses from coming forward to testify. This undesirable result can be avoided by adopting the rule that a witness cannot be impeached on facts that are merely collateral to the issue.

The appellant has failed to prove that his fundamental rights have been prejudiced. The judgment should be affirmed.

CROCKETT, J., concurs in the dissenting opinion of ELLETT, C. J.